**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **1. LAWRENCE RUIZ,**<br>**an individual,** | ) | |
| | ) | |
| **2. WILLIAM HUTCHINSON,**<br>**an individual,** | ) | **Case No.: 15-CV-95-RAW** |
| | ) | |
| **Plaintiffs,** | ) | **ATTORNEY LIEN** |
| | ) | **CLAIMED FOR THE FIRM** |
| **vs.** | ) | |
| | ) | |
| **1. TOWN OF VIAN,** | ) | **JURY TRIAL DEMANDED** |
| **a public entity,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

**COME NOW**, Plaintiffs, Lawrence Ruiz and William Hutchinson ("Plaintiffs") by and through their attorney of record, Charles C. Vaught of *Armstrong & Vaught, P.L.C.*, and hereby bring the following claims against Defendant, Town of Vian ("Defendant"), for wrongful termination, racial discrimination, retaliation, declaratory and injunctive relief, actual, compensatory and equitable damages, punitive damages, and costs and attorney fees pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 1981, *et seq.*, the First Amendment of the United States Constitution, 42 U.S.C. § 1983, *et seq.* and the laws and constitution of the State of Oklahoma. Plaintiffs would respectfully allege as follows:

### JURISDICTIONAL REQUIREMENTS

1.     At all times relevant to this cause of action, Plaintiff Ruiz is and was a member of a class of persons protected by Title VII of the Civil Rights Act, to wit: Hispanic, an employee who opposed a discriminatory practice, an employee who participated in a covered proceeding

1

under Title VII and was a whistle blower under both Oklahoma and Federal law.

2.    At all times relevant to this cause of action, Plaintiff Hutchinson is and was a member of a class of persons protected by Title VII of the Civil Rights Act, an employee who opposed a discriminatory practice, an employee who participated in a covered proceeding under Title VII, and was a whistle blower under both Oklahoma and Federal law..

3.    At all times relevant to this cause of action, Defendant is and was a public entity existing under the laws of the State of Oklahoma, within the State of Oklahoma, and, more particularly, Sequoyah County.

4.    Declaratory and equitable relief are sought pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202, and compensatory and punitive damages are sought pursuant to 42 U.S.C. §§ 2000e, et seq. and 42 U.S.C. § 1981.

5.    Costs and attorney's fees may be awarded pursuant to Rule 54 of the Federal Rules of Civil Procedure and the above statutes.

6.    This Court has jurisdiction over the parties and the subject matter of this action, and this action properly lies in the Eastern District of Oklahoma, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1391(b), because the unlawful practices alleged herein arose in this judicial district.

7.    In conformance with Title VII statutory prerequisites, Plaintiffs filed formal Charges of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). Plaintiff Ruiz filed a Charge of Discrimination on April 24, 2014. Plaintiff Hutchinson filed a Charge of Discrimination on June 20, 2014.

8.    On February 26, 2015, the EEOC issued Plaintiff Ruiz a Right to Sue letter, (attached as

2

Exhibit 1 hereto and hereby incorporated by reference as though fully set forth herein).

9.    On February 25, 2015, the EEOC issued Plaintiff Hutchinson a Right to Sue letter, (attached as Exhibit 2 hereto and hereby incorporated by reference as though fully set forth herein).

10.   Plaintiffs timely filed their Complaints in this matter within ninety (90) days of receipt of the aforementioned Right to Sue letters.

11.   At all times relevant to this cause of action, Plaintiffs were members of a class of persons protected by Oklahoma public policy, to wit: public employee whistle blowers who were retaliated against for exposing wrongful acts, in contravention of Oklahoma public policy.

12.   With respect to the Oklahoma Governmental Tort Claims Act ("GTCA"), Plaintiffs submitted a GTCA Notice to Defendant by mail on August 28, 2014.  Thereafter, Defendant had 90 days in which to approve or deny Plaintiffs' claims.  Plaintiffs' claims were denied when they received Defendant's letter denying their claim on September 17, 2014.  Plaintiffs subsequently filed this action within the 180 day deadline in which to file suit under the GTCA, thus complying will all requirements under the GTCA for pursuing this action against Defendant.

**OPERATIVE FACTS**

13.   On or about December 17, 2012, the Town of Vian Council approved Ruiz's part-time appointment as a police officer and he began his employment with Defendant, through its agent, the Vian Police Department.

14.   On or about December 21, 2012, while on patrol, Ruiz was approached by Assistant Chief George Wildcat ("Wildcat"). Wildcat informed Ruiz that his nickname was "Taco." Ruiz advised Wildcat disapproved of the term, but Wildcat continued to refer to him as "Taco."

3

15.   On or about December 24, 2012, Ruiz approached Police Chief Alan Ellis ("Ellis") regarding Wildcat's conduct. Plaintiff contends that no action was taken against Ellis based on his complaint as Ellis continued to refer to him as "Taco" throughout Plaintiff's employment.

16.   On or about March 17, 2013, Ruiz contacted Officer Brooks ("Brooks") to assist with his night patrol. Ruiz had previously asked Wildcat to leave the keys to a police vehicle so that they could conduct patrols that day. When Ruiz reported for his shift, the only keys he found were to the department's Dodge Charger. Ruiz then attempted to contact Wildcat to determine whether he could use the vehicle for his patrol. Unable to locate him, Ruiz contacted Police Commissioner and Vian Councilman, Dennis Fletcher ("Fletcher"). Fletcher informed Ruiz that he could use the vehicle.

17.   While on patrol, Wildcat sent a text message to Ruiz which stated, "Taco, park that fucking Dodge now!" Ruiz attempted to contact Wildcat, but Wildcat ignored the calls. Wildcat then called Brooks, who handed his phone to Ruiz. Ruiz expressed his displeasure with Wildcat's tone and use of the term "Taco" and requested that he refrain from speaking to him in such a manner. Wildcat immediately hung up the phone and refused to accept Ruiz's calls thereafter.

18.   On or about March 18, 2013, Ellis contacted Ruiz and inquired about what transpired with Wildcat. Ruiz recapped the events and informed Ellis that he did not appreciate Wildcat's tone and, again, requested that he not be referred to as "Taco." To Plaintiff's knowledge, no actions were taken to address the manner in which Wildcat spoke to him or his continued use of the phrase "Taco" in reference to Plaintiff as the behavior continued thereafter.

19.   On or about May 10, 2013, the Town of Vian Council approved making Ruiz a full-time

4

employee.

20.   On or about June 19, 2013, while on duty, Ruiz received a phone call from former Vian police officer, Lee Durham, advising him that there was an intoxicated man walking down the street with a beer in his hand. When Ruiz arrived at the man's location, he observed that the man was Bobby Everett ("Everett"), Fletcher's brother-in-law. As Ruiz arrested Everett, Everette's wife, Dawn Everett, yelled "Wetback! Do you know who we are?" She screamed that Ruiz would lose his job for arresting Everett because her brother was the Police Commissioner.

21.   Shortly after arresting Everett, Ruiz received phone calls from Vian Mayor, Kenny Johnson ("Johnson"), Fletcher and the City Administrator, Gene Grinstead ("Grinstead") about the arrest.

22.   Later that week, Ellis contacted Ruiz and told him that he was no longer to patrol Everett's street.

23.   Over the next seven months, Wildcat and Ellis used racial slurs to reference Ruiz, including but not limited to, "Taco," "Mexican" and "Bean eater."

24.   On or about July 2, 2013, Wildcat sent Ruiz a Facebook message stating "What's up Taco?!!!"

25.   On or about August 15, 2013, Wildcat sent Ruiz another Facebook message, stating "Taco!!! Where is the Taco?????"

26.   On or about October 17, 2013, Jessica Davis ("Davis") from the Vian Tenkiller Newspaper contacted Ruiz and informed him that Fletcher had defaced his nameplate by writing "No Fucking Wetbacks Allowed" on it. Davis stated that she and Amie Remer, another writer,

5

observed Fletcher defacing the nameplate and that at the time, he stated "I'll just leave [Ruiz] a note and let him know this desk is mine." Soon after, Ruiz received a phone call from Fletcher asking him if he had received his note.

27.   The same day, Hutchinson approached Ruiz about the discriminatory remarks he overheard and they discussed the defaced name plate.

28.   On or about October 21, 2013, Hutchinson began his employment with Defendant, through its agent, the Vian Police Department, as a part-time police officer. Shortly thereafter, Hutchinson observed his co-workers and Fletcher referring to Ruiz as "Taco."

29.   On or about January 20, 2014, the Town of Vian Council approved promoting Ruiz to Assistant Chief of the Vian Police Department. Johnson informed him that he would receive less compensation that the previous assistant chief. When Ruiz inquired as to why there was a discrepancy in the pay, Johnson stated that Ruiz was receiving the same starting pay as the previous assistant chief, $14 per hour.

30.   On or about February 5, 2014, Ruiz received a text message from Wildcat stating "Taco what up?"

31.   On or about February 17, 2014, the Town of Vian council set Ruiz's pay to $10.75 per hour.

32.   On or about February 21, 2014, Ruiz received a text message from Wildcat stating "What up Taco?"

33.   On or about March 4, 2014, several individuals approached Ruiz and informed him that Grinstead had been misappropriating town funds, property and fuel. They stated that Grinstead had been assisting Johnson in repairing his rental homes by using town's workers and resources. The individuals asked to remain anonymous for fear of retaliation by the town.

6

34.     Ruiz attempted to investigate the reports by interviewing the fuel service manager where it
        was reported that Grinstead was using the town's fuel card for his personal vehicle.

35.     Shortly thereafter, Ruiz received a phone call from Ellis stating that Grinstead wanted a
        written report regarding the misappropriation complaint which included the names of the
        individuals who had complained. Ruiz refused to provide the names, but informed Ellis that
        there was an active investigation against Grinstead regarding the complaints.

36.     On or about March 3, 2014, Plaintiffs approached Mayor Kenny Johnson ("Johnson") about
        the discriminatory behavior he had been subjected to. During the conversation, Ruiz advised
        Johnson that he intended to file a formal Charge of Discrimination with EEOC. Johnson
        insisted that he would address the conduct, but no action was taken to remedy the situation
        as the behavior continued after it was reported to the Mayor. When Plaintiffs attempted to
        locate the necessary information to contact the EEOC, they discovered the statutorily
        required posters were not displayed at their place of employment.

37.     On or about March 7, 2014, Chief Ellis made an uninvited visit to Hutchinson's home and
        advised him that if he did not "stop riding with [Ruiz he was] in jeopardy of losing [his] job."
        Hutchinson told Ellis that he believed Ruiz was being discriminated against and Ellis left.
        Within five minutes, Ellis arrived at Ruiz's location and Ruiz asked him why Hutchinson
        was in danger of losing his position. Ellis replied, "Fuck, that only took three blocks." He
        further stated that it was the council that took issue with Hutchinson patrolling with him.
        Ruiz explained that he preferred to patrol with Hutchinson because of the increased
        retaliation he experienced after reporting the misappropriation complaints to the Sequoyah

7

County Sheriff's Office and the Oklahoma State Bureau of Investigation and his continued complaints of race discrimination to the Town.

38.    On or about March 10, 2014, Ruiz received a phone call from Ellis where he asked what the town needed to do to make the misappropriation complaint "go away." Ruiz stated that there was nothing that could be done as the matter was under investigation.

39.    On or about March 12, 2014, Ruiz received formal written corruption complaints from Fred Aye. Ellis subsequently approached him and asked how the town could make the complaints "go away" and stated "It wasn't me, it was them." Ruiz submitted a formal charge of race discrimination to the EEOC.

40.    On or about March 17, 2014, the Town of Vian held a council meeting where it examined several "complaints" against Ruiz, but determined in an executive session that "no official action would be taken." Ellis advised Ruiz that the council wanted him "out of sight, out of mind" and that he was not being disciplined.

41.    On or about April 15, 2014, Ruiz's wife informed him that the manager of an apartment complex approached her and expressed her displeasure that Ruiz no longer patrolled her area. She also stated that when she complained to Ellis about the changes he stated, "[Ruiz] ain't gonna be around long enough to get back on swing shift." When Ruiz approached Ellis about his comments and he confirmed that he "probably said that."

42.    On or about April 17, 2014, the Town of Vian posted a meeting agenda featuring as a line item: ITEM 17: A CONFIDENTIAL COMMUNICATION BETWEEN A PUBLIC BODY AND ITS ATTORNEY CONCERNING A PENDING INVESTIGATION EEOC CLAIM

8

OF LAWRENCE G. RUIZ CHARGE NO 564-2014-00663 AND TO AVOID DISCLOSURE OF CONFIDENTIAL INFORMATION.

43.    On or about April 21, 2014, the Town of Vian held a meeting where all police officers were asked to participate in an executive session with the exception of the Plaintiffs. During the session, the council voted to terminate the Plaintiffs. Official notice of their terminations was published in the Vian Tenkiller News. The notice stated that Plaintiffs were terminated "for the good of the service".

44.    On or about April 23, 2014, as Plaintiffs turned in their gear, Hutchinson said to Ellis, "You never had our back." Ellis responded, "They have been after y'all for months."

**COUNT I**
**WRONGFUL TERMINATION IN VIOLATION OF OKLAHOMA PUBLIC POLICY**

45.    Plaintiffs incorporate and re-allege the foregoing paragraphs as though fully set forth herein and would further state as follows:

46.    Plaintiffs' actions were taken pursuant to a compelling public policy interest, to wit: protecting the public interest by seeing that tax dollars and town revenues and resources were not misused by town officials and employees.

47.    As members of a protected class, to wit: whistleblowers, Plaintiffs are protected by Oklahoma Public Policy, as recognized by *Burk v. K-Mart Corp.*, 770 P.2d 24, 29 (Okla. 1989) and *Hayes v. Eateries, Inc.*, 905 P.2d 778, 785 (Okla. 1995).

48.    Plaintiffs' terminations were motivated by retaliation for their good faith report of wrongdoing by Ellis and other council members to the Sequoyah County Sheriff's Office and the Oklahoma State Bureau of Investigation in violation of Oklahoma Public Policy.

9

49.     The conduct alleged herein constitutes illegal retaliation against public whistleblowers, in violation of Oklahoma Public Policy.

**WHEREFORE**, Plaintiffs pray for a declaration that the conduct Defendant engaged in is in violation of Plaintiffs' rights, for an award to Plaintiffs for actual, compensatory and punitive damages, including emotional distress, mental anguish, and humiliation, in an amount in excess of One Hundred Thousand Dollars ($100,000.00); costs and expenses, including reasonable attorney's fees as provided for by applicable law; an assessment of damages to compensate for any tax consequences of this judgment and for any other such legal or equitable relief this Honorable Court deems just and proper.

## COUNT II
## RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII

50.     Plaintiff Ruiz incorporates and re-alleges the foregoing paragraphs as though fully set forth herein and would further state as follows:

51.     As a member of a protected class, to wit: Hispanic, Plaintiff Ruiz is protected by the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

52.     The disparate treatment of Plaintiff by Defendant and its employees and/or agents was a direct result of discrimination on the basis of his race, to wit: Hispanic, as prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

53.     Plaintiff Ruiz was repeatedly treated unfairly and ultimately terminated, and the motivating reason for these acts was based on his race, to wit; Hispanic, as prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

54.     The Defendant ratified the acts of its agents and employees by failing to take remedial action

upon notice by Plaintiff Ruiz of the circumstances and by allowing the acts to occur after receiving actual and constructive notice of the acts from Plaintiff Ruiz.

55.    The conduct complained of constitutes illegal race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

**WHEREFORE**, Plaintiff Ruiz prays that the Defendant appear and answer this Complaint, and that this Court: (1) declare the conduct engaged in by the Defendant to be in violation of Plaintiff's rights; (2) enjoin the Defendant from engaging in such conduct; (3) enter a judgment for Plaintiff in an amount in excess of $100,000.00 plus interest, costs, attorney fees, and compensatory and punitive damages; (4) order Plaintiff be reinstated to his former position, or receive front pay in lieu thereof; and (5) grant Plaintiff such other and further relief as this Court may deem just, proper and equitable.

## COUNT III
## RETALIATION FOR OPPOSING DISCRIMINATORY PRACTICES

56.    Plaintiff Hutchinson incorporates and re-alleges the foregoing paragraphs as though fully set forth herein and would further state as follows:

57.    As a member of a protected class, to wit: a person who opposes discrimination, Plaintiff Hutchinson is protected by the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

58.    The disparate treatment of Plaintiff Hutchinson by Defendant and its employees and/or agents was a direct result of discrimination on the basis of his opposition of discrimination, as prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

59.    Plaintiff Hutchinson was repeatedly treated unfairly and ultimately terminated, and a

motivating reason for these acts was based on his opposition of discrimination, as prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

60.   The Defendant ratified the acts of its agents and employees by failing to take remedial action upon notice by Plaintiff Hutchinson of the circumstances and by allowing the acts to occur after receiving actual and constructive notice of the acts from Plaintiff Hutchinson.

61.   The conduct complained of constitutes illegal race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

**WHEREFORE**, Plaintiff Hutchinson prays that the Defendant appear and answer this Complaint, and that this Court: (1) declare the conduct engaged in by the Defendant to be in violation of Plaintiff's rights; (2) enjoin the Defendant from engaging in such conduct; (3) enter a judgment for Plaintiff in an amount in excess of $100,000.00 plus interest, costs, attorney fees, and compensatory and punitive damages; (4) order Plaintiff be reinstated to his former position, or receive front pay in lieu thereof; and (5) grant Plaintiff such other and further relief as this Court may deem just, proper and equitable.

## COUNT IV
## RETALIATION IN VIOLATION OF TITLE VII

62.   Plaintiffs incorporate and re-allege the foregoing paragraphs as though fully set forth herein and would further state as follows:

63.   Plaintiffs followed the proper procedures as employees of Defendant in exercising their federally protected civil rights and filed a charge of discrimination to the EEOC, reporting the discrimination they witnessed and suffered as Defendant's employees.

64.   Plaintiffs reported the discrimination they witnessed and suffered as employees of Defendant

to the proper authorities.

65.     As a direct result of Plaintiffs' complaints, Defendant altered the terms, conditions and/or privileges of their employment, by terminating them and with respect to Plaintiff Ruiz, by failing to pay him at a comparable rate as other non-minorities in his position.

66.     As a direct result of Plaintiffs' complaints, Defendant retaliated against them for exercising their federally protected rights to oppose discrimination that they witnessed and were subject to in the workplace.

        **WHEREFORE**, Plaintiffs pray that the Defendant appear and answer this Complaint, and that this Court: (1) declare the conduct engaged in by the Defendant to be in violation of Plaintiffs' rights; (2) enjoin the Defendant from engaging in such conduct; (3) enter a judgment for Plaintiffs in an amount in excess of $100,000.00 plus interest, costs, attorney fees, and compensatory and punitive damages; (4) order Plaintiffs be reinstated to his former position, or receive front pay in lieu thereof; and (5) grant Plaintiffs such other and further relief as this Court may deem just, proper and equitable.

## COUNT V
## RETALIATION IN VIOLATION OF THE OKLAHOMA CONSTITUTION

67.     Plaintiffs incorporate and re-allege the foregoing paragraphs as though fully set forth herein and would further state as follows:

68.     Plaintiffs engaged in protected activity by exercising their right to freedom of expression regarding a matter of public concern.

69.     At all times relevant to this cause of action, Plaintiffs' interest in commenting on the matters of public concern outweighed any injury their speech could have caused to the interests of

13

Defendants as employers in promoting efficiency of public services performed through its employees; all in violation of Art. 2, § 22 of the Oklahoma Constitution.

70.     At all times relevant to this cause of action, Plaintiffs' speech was motivated by Defendants violations of state law and their unconstitutional acts taken against Plaintiffs.

71.     Plaintiffs were deprived of property, in the form of wages, without due process of law by Defendants, in violation of Art. 2, § 7 of the Oklahoma Constitution, when they were terminated for engaging in the free expression of matters of public concern, which is protected by Art. 2, § 22 of the Oklahoma Constitution, without being afforded an administrative hearing before a neutral trier of fact.

        **WHEREFORE**, Plaintiffs pray for a declaration that the conduct Defendants engaged in is in violation of their rights; for an injunction to prohibit further violations of Plaintiffs' rights under the Oklahoma Constitution; for an award to Plaintiffs for actual, compensatory and punitive damages, including emotional distress, mental anguish, and humiliation, in an amount in excess of One Hundred Thousand Dollars ($100,000.00); for an award of the costs and expenses, including reasonable attorney's fees as provided for by applicable law; an assessment of damages to compensate for any tax consequences of this judgment and for any other such legal or equitable relief this Honorable Court deems just and proper.

## COUNT VI
## FIRST AMENDMENT RETALIATION - 42 U.S.C. § 1983

72.     Plaintiff Ruiz incorporates and re-alleges the foregoing paragraphs as though fully set forth herein and would further state as follows:

14

73.     Plaintiff Ruiz's speech against Mayor Johnson and City Administrator Grinstead constitutes matters of public concern because they call attention to the Defendant's failure to discharge its governmental duties and misuse of public resources and, as a result, is constitutionally protected under the First Amendment to the U.S. Constitution.

74.     At all times relevant to this cause of action, the Town Council was the final policymaker within the meaning of 42 U.S.C. § 1983, as demonstrated by their role in determining whether Plaintiff Ruiz's employment continued.

75.     At all times relevant to this cause of action, Plaintiff Ruiz's interest in commenting on the matters of public concern outweighed Defendant's interest in promoting self-efficiency.

76.     At all times relevant to this cause of action, Plaintiff Ruiz's speech was motivated by Defendant's violations of state and federal law, as well as their unconstitutional acts against Plaintiffs.

77.     Plaintiff Ruiz's termination constitutes an adverse employment action within the meaning of 42 U.S.C. § 1983.

78.     Plaintiff Ruiz's terminations was substantially motivated by his having exercised his constitutionally protected right to free expression regarding matters of public concern.

79.     By terminating Plaintiff Ruiz, Defendant effectively silenced Plaintiff Ruiz from exercising his freedom of expression regarding matters of public concern.

80.     By terminating Plaintiff Ruiz, Defendant was acting under color of state law as elected officials.

81.    Defendant created a position wherein Plaintiff Ruiz's employment was conditioned on his not exercising his constitutionally protected free-speech rights, as prohibited by 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiff Ruiz prays for a declaration that the conduct Defendant engaged in is in violation of his rights; for a injunction to prohibit further violations of his rights under the First Amendment; for an award to him for actual, compensatory and punitive damages, including emotional distress, mental anguish, and humiliation, in an amount in excess of One Hundred Thousand Dollars ($100,000.00); for an award of the costs and expenses, including reasonable attorney's fees as provided for by applicable law; an assessment of damages to compensate for any tax consequences of this judgment and for any other such legal or equitable relief this Honorable Court deems just and proper.

Respectfully submitted,

/s/ Charles C. Vaught
Charles C. Vaught, OBA # 19962
**ARMSTRONG & VAUGHT, P.L.C.**
2727 East 21st Street Suite 505
Tulsa, Oklahoma      74114
(918) 582-2500  *Telephone*
(918) 388-0100  *Fax*
**ATTORNEY FOR PLAINTIFF**

16